O

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# LAREDO DIVISION

| | | |
|---|---|---|
| **LAURO VIDAL**, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 5:06-cv-140 |
| | § | |
| **MICHAEL CHERTOFF**, Secretary of | § | |
| **Department of Homeland Security**, | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

## OPINION & ORDER

Pending before the Court is Defendant Michael Chertoff's Motion to Dismiss for Lack of Subject Matter Jurisdiction. [Dkt. No. 13]. Upon due consideration of the pleadings and the governing law, the Court GRANTS Defendant's Motion.

**I.    PROCEDURAL BACKGROUND AND RELEVANT FACTS**

Plaintiff Lauro Vidal began his employ with the United States Border Patrol in the mid-1980s. [Dkt. No. 1, ¶¶ 9-10]. The latest in a series of incremental promotions was his 2001 appointment as Patrol Agent in Charge of [the Border Patrol] Laredo North Station. [Dkt. No. 1, ¶ 15]. Shortly after assuming this position, Plaintiff appeared before the Equal Employment Opportunity Commission (EEOC) as a witness in a dispute brought by a coworker. [Dkt. No. 2, ¶¶ 18-22]. According to Plaintiff, because his testimony contradicted that of the Chief of the Border Patrol Laredo Section, John Montoya, [Dkt. No. 1, ¶ 20], enmity began to arise between Plaintiff and other ranking offers in the Laredo Section, manifesting in the decrease of his supervisory powers, a wrongful decrease in his performance evaluation, the threat of an "integrity investigation," and, ultimately, what Plaintiff terms a "Hobson's choice": in October

2005, Plaintiff was given the option of either being investigated with the inevitable result of termination without cause, or retiring early. [Dkt. No. 1, ¶¶ 23-28]. He chose the latter. [Dkt. No. 1, ¶ 28].

On February 7, 2006, Plaintiff filed an employment discrimination complaint with the Department of Homeland Security (DHS). [Dkt. No. 13-2 at 1]. Specifically, Plaintiff claimed he was subject to retaliation in violation of Title VII of the Civil Rights Act of 1964, codified as 42 U.S.C. § 2000e-e17. Title VII makes it unlawful for an employer to:

> discriminate [*i.e.*, retaliate] against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this title [42 U.S.C. §§ 2000e-2000e-17], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title [42 U.S.C. §§ 2000e-2000e-17].

42 U.S.C. § 2000e-3. On July 12, 2006, DHS issued its Final Decision dismissing Plaintiff's complaint on the ground that he had failed to comply with 29 C.F.R. 1614.105(a)(1), an administrative procedure requiring all employees bringing discrimination complaints to first "initiate contact with a[n] [Equal Employment Opportunity] Counselor within 45 days of the date of the matter alleged to be discriminatory . . . ." [Dkt. No. 13-2]. Based on the administrative dismissal of his claim, Plaintiff filed the instant suit in federal court on October 3, 2006, asserting the same claim—discriminatory retaliation in violation of Title VII. [Dkt. No. 1].

On January 5, 2007, Defendant filed the Motion to Dismiss now before the Court, arguing that, under controlling case law, because Plaintiff did not timely follow administrative procedures, he failed to "exhaust" his administrative remedies, and therefore this Court lacks subject-matter jurisdiction to entertain this suit. [Dkt. No. 13].

2

## II.     DISCUSSION

As a preliminary matter, the debate is ongoing as to whether administrative exhaustion is a *jurisdictional* prerequisite to an Article III court's entertainment of a Title VII suit. *Pacheco v. Mineta*, 448 F.3d 783, 788 n.7 (5th Cir. 2006) ("There is disagreement in this circuit on whether a Title-VII prerequisite, such as exhaustion, is merely a prerequisite to suit, and thus subject to waiver and estoppel, or whether it is a requirement that implicates subject matter jurisdiction."). Second, even if it is, a failure to *timely* initiate administrative procedures is not necessarily synonymous with a "failure to exhaust" administrative remedies. *See Id.* at 788 n.7 (illustrating one manner in which the distinction between exhaustion and timeliness may be crucial). Luckily, however, as is made apparent *infra*, disposition of the current matter does not turn on the above two distinctions.

"Federal employees must seek informal counseling before they file a[] [discrimination] complaint [under 42 U.S.C. § 2000e.]" *Teemac v. Henderson*, 298 F.3d 452, 454 (5th Cir. 2002) (citing 29 C.F.R. § 1614.105(a) and *Pacheco*, 966 F.2d at 905). In determining whether a plaintiff "initiate[d] contact with a [c]ounselor within 45 days of the date of the matter alleged to be discriminatory," two points in time are of obvious focus: (1) the time at which the most recent retaliatory act occurred; and (2) the moment the complainant initiated contact with the EEO counselor.

DHS, in concluding that Plaintiff failed to satisfy § 1614.105(a), stated that:

> the last event making up [Plaintiff's] harassment was [his] forced retirement on October 31, 2005. The 45-day period for contacting a Counselor, having begun on November 1st, ended on December 15, 2005. [Plaintiff's] initiating [sic] EEO Counselor contact on January 31, 2006, was well past this December 15th deadline and thus was untimely.

[Dkt. No. 13-2].

Because Defendant's Motion to Dismiss, and Plaintiff's Response to that Motion, center on whether Plaintiff complied with § 1614.105(a), this Court must repeat the same factual inquiry conducted by DHS. In doing so, this Court owes no deference to DHS' finding; rather, the issue is considered *de novo*. *Teemac*, 298 F.3d at 455.

In his Response to Defendant's Motion, Plaintiff indicates that, despite his willingness to retire early, Defendant nevertheless opened the previously threatened integrity investigation. [Dkt. No. 24 at 11]. As such, Plaintiff, in his Response to Defendant's Motion to Dismiss, argues that the most recent retaliatory event was not his allegedly forced retirement, as DHS found, but rather the date, following his retirement, on which "he discovered . . . that the . . . investigation against [him] remained open." [Dkt. No. 24 at 10]. Plaintiff seems to argue that the mere *continuation* of the allegedly retaliatory investigation is itself a retaliatory act, apparently because his notification of its pendency evoked in him a feeling of being harassed or coerced.

Nowhere in his Amended Complaint does Plaintiff allege that he was threatened or retaliated against after he retired. Rather, he colors his alleged forced retirement in October 2005 as the primary, and most recent, retaliatory event. [Dkt. No. 2, ¶¶27-29]. Assuming the viability of Plaintiff's argument,[1] the Court will consider Plaintiff's post-complaint filings only to the extent that they clarify arguments advanced in his complaint. The Court will *not* effectively amend Plaintiff's complaint *sua sponte* to include significant factual averments not advanced originally. As such, the date of the most recent retaliatory act for present purposes was Plaintiff's allegedly forced retirement on October 31, 2005.

---

[1] This assumption is extremely charitable. In determining when a discrete retaliatory act "occurred," "[the] proper focus is upon the time of the discriminatory act [itself,] not upon the time at which the *consequences* of the acts became most painful." *Del. State College v. Ricks*, 449 U.S. 250, 258 (1980) (quoting *Abramson v. University of Hawaii*, 594 F.2d 202, 209 (1979)). Thus, although the commencement of the investigation may have constituted a retaliatory act, Plaintiff's mere discovery that the investigation was *still pending*, and his accompanying anxiety, cannot constitute a retaliatory act. *See Ledbetter v. Goodyear Tire & Rubber Co*., 2007 U.S. Lexis 6295 (2007) ("A new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from the [original] discrimination.").

Plaintiff fails to commit to a date on which he initiated contact with an EEO counselor. In his Response, Plaintiff states on page eight that he first attempted to contact a counselor on January 23, 2006. [Dkt. No. 24]. On page twelve, however, he claims it was on December 22, 2005. [Dkt. No. 24]. Assuming the date most beneficial to him, Plaintiff's allegedly forced retirement predates his initial counselor contact by more than 45 days. Thus, Plaintiff failed to comply with § 1614.105(a)(1).

Paragraph (a)(2) of § 1614.105[2] provides for an extension of the 45-day deadline under extenuating circumstances; the provision has been interpreted as a "codifi[cation] of the doctrine of equitable tolling." *Id.* at 455. Plaintiff argues that, if he indeed was late in contacting the EEO counselor, he is nevertheless entitled to equitable tolling. [Dkt. No. 24 at 13]. DHS concluded otherwise. [Dkt. No. 13-2 at 2].

A key issue neither party addresses is whether this Court, upon concluding that Plaintiff failed to timely contact an EEO counselor, has the power to equitably toll the 45-day limitation period under § 1614.105(a)(2), or whether that power lies solely with the respective agency reviewing the controversy in the first instance. The answer to this question turns on whether a party's failure to comply with administrative time limitations defeats the federal courts' subject matter jurisdiction, as Defendant suggests, or whether such deadlines are lesser non-jurisdictional prerequisites to suit. If the latter is true, the 45-day limitation is subject in the federal courts to various discretionary doctrines such as equitable tolling. If, however, Defendant is correct, the Court must consider Plaintiff's failure to obtain an extension from DHS as an

---

[2] "The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been [sic] known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission."

absolute bar to this Court's jurisdiction, regardless of the arguments he now advances in favor of tolling. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Munoz v. Aldridge*, 894 F.2d 1489, 1494 (5th Cir. 1990).

The Supreme Court has already decided that the time requirements under Title VII, at least within the context of a suit against a private defendant, are non-jurisdictional prerequisites to suit, akin to statutes of limitations. *Zipes*, 455 U.S. at 385. However, there is currently within the Fifth Circuit disagreement as to whether *Zipes* controls in Title VII suits *against the federal government*. *Compare*, *e.g.*, *Pacheco*, 446 F.3d at 787 n.7; *and Teemac*, 298 F.3d at 452; *with Hernandez v. Aldridge*, 866 F.2d 800 (5th Cir. 1989); *and Brown v. Department of Army*, 854 F.2d 77 (5th Cir. 1988). This conflict has led to great confusion within this circuit, leading some courts to attempt integration of two propositions fundamentally irreconcilable. *See*, *e.g.*, *Rikabi v. Nicholson*, 2006 U.S. Dist. Lexis 83805 (S.D. Miss. 2006) (concluding that because compliance with § 1614.105(a)(1) is jurisdictional, a plaintiff can only circumvent it through equitable tolling and estoppel, mechanisms that are, in actuality, wholly unavailable where a time limitation is truly "jurisdictional," *see Zipes*, 455 U.S. at 393; *Munoz*, 894 F.2d at 1494). Although it is an issue exceedingly ripe for *en banc* resolution, the Court need not take a position in this debate since, even if this Court did have the power to equitably toll the 45-day limitation, it would not.

Plaintiff first argues that he was so harried with anxiety and depression after being forced to retire as to have been mentally incapacitated and, thus, unable to pursue the administrative process. [Dkt. No. 24 at 13-17]. Although § 1614.105(a)(2) calls for an extension where the claimant is "prevented by circumstances beyond his or her control from contacting the counselor within the time limits," the Fifth Circuit, as Plaintiff admits, has not yet deemed mental illness an

impediment cognizable under § 1614.105(a)(2). *See*, *e.g.*, *Hood v. Sears Roebuck & Co.*, 168 F.3d 231, 232-34 (5th Cir. 1999).

Additionally, there is no basis in the record for concluding that Plaintiff was truly incapacitated such that he was literally unable to timely contact an EEO counselor. Plaintiff has provided the affidavit of his treating physician, Dr. Eloy Zamarron, in which Dr. Zamarron states that he began treating Plaintiff on November 14, 2005, at which time Plaintiff reported that he had been isolating himself in his residence. In Dr. Zamarron's opinion, Plaintiff at the time was so depressed and anxious that he "had no ability to make decisions concerning or affecting his former employment." [Dkt. No. 24 at 34]. Interestingly, however, Plaintiff was not so incapacitated as to be unable to schedule and keep his appointments with his treating physician. One would reasonably presume that if Plaintiff were thusly competent, he was competent enough to call an EEO counselor from the comfort of his own home, in which he remained "isolated."

Plaintiff's next argument in favor of equitable tolling is that DHS failed to make contact information for EEO counselors sufficiently conspicuous to prospective claimants as is required under 29 C.F.R. § 1614.102(b)(5).[3] [Dkt. No. 24 at 17]. The case law—even that which Plaintiff cites—suggests that such a violation may serve as a basis for equitable tolling only if the evidence shows that the plaintiff did not have "*general* knowledge of his right not to be discriminated against . . . ." *Clark v. Resistoflex Co., Div. of Unidynamics Corp.*, 854 F.2d 762, 768 (5th Cir. 1988) (quoting *McClinton v. Alabama By-Products Corp.*, 743 F.2d 1483, 1486 (11th Cir.1984)). Thus, the mere showing that the plaintiff lacked "knowledge of his *specific*

---

[3] "[The agency must] [p]ublicize to all employees and post at all times the names, business telephone numbers and business addresses of the EEO [c]ounselors (unless the counseling function is centralized, in which case only the telephone number and address need be publicized and posted), a notice of the time limits and necessity of contacting a [c]ounselor before filing a complaint and the telephone numbers and addresses of the EEO Director, EEO Officer(s) and Special Emphasis Program Managers."

rights under the [law] and/or the existence of the . . . filing period" is insufficient to compel tolling. *Id.*

Attached as Exhibit 4 to Defendant's Reply are what Defendant describes as "payroll notices given to [P]laintiff that inform him of the necessity to contact [an] EEO [counselor] within 45 days" of discriminatory events. [Dkt. No. 27, Ex. 4, ¶ 6 (referring to Dkt. No. 27-3 at 12-25)]. Also included is a copy of the certificate awarded to Plaintiff upon his completion of EEO Complaint Process Training. [Dkt. No. 27-3, Ex. 3 at 3]. There could hardly be stronger evidence that Plaintiff was aware, in a general sense, of his right to be free from discrimination in the workplace, and of the existence (if not the details) of the process for vindicating that right.

Lastly, Plaintiff argues that the 45-day limitation in § 1614.105(a)(2) does not apply to complaints of retaliation at all because paragraph (a) speaks only of "discrimination" on the basis of immutable characteristics, such as race. [Dkt. No. 24 at 21]. This argument, of course, has no merit. Courts regularly apply § 1614.105(a)(2) to claims of retaliation. *See*, *e.g.*, *Yates v. Johanns*, 2007 U.S. Dist. Lexis 19328 (N.D. Miss. 2007) (section "1614.103(a) considers complaints of retaliation equivalent to complaints of discrimination for the purposes of the section, and 1614.105(a) requires that an aggrieved person consult an EEO counselor prior to filing a complaint."); *Dennis v. Johanns*, 2006 U.S. Dist. Lexis 63456 (N.D. Miss. 2006); *Mascarenas v. Gonzales*, 2006 U.S. Dist. Lexis 16197 (W.D. Tex. 2006); *Harris v. Potter*, 2005 U.S. Dist. Lexis 32427 (S.D. Tex. 2005).

### III.     CONCLUSION

Although the Court does not necessarily conclude that it lacks subject-matter jurisdiction to hear this dispute, it nevertheless agrees that Plaintiff failed to comply with § 1614.105(a)(1), and therefore his claim has expired. Since the Court finds no basis for tolling the 45-day limitation established by that provision, Defendant's Motion to Dismiss, [Dkt. No. 13], is **GRANTED.**

IT IS SO ORDERED.

Done this 6th day of July, 2007, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**